IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE SUBPOENAS SERVED UPON THE LAW FIRM OF SNOW, CHRISTENSEN & MARTINEAU AND THE CANOPY GROUP<br><br>Relating to the litigation pending in the United States District Court for the District of Maryland captioned *Novell, Inc. v. Microsoft Corp.*, Civil Action No. JFM-05-1087 (Consolidated into *In re Microsoft Corp. Antitrust Litigation*, MDL Docket No. 1332) | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL SNOW, CHRISTENSEN & MARTINEAU TO PRODUCE DOCUMENTS IN RESPONSE TO TWO SUBPOENAS**<br><br>Case No.  2:08 mc 675 DB<br><br>District Judge Dee Benson<br><br>Magistrate Judge David Nuffer |

Microsoft Corporation (Microsoft) filed this ancillary action seeking enforcement of several subpoenas, one of which was served on Snow, Christensen & Martineau (SCM) and another served on The Canopy Group.[1]  SCM is a law firm that has represented both Novell, Inc. (Novell) and later Caldera, Inc. (Caldera), the latter being the predecessor of The Canopy Group.[2]  Currently, Novell and Microsoft are parties to a dispute in the U.S. District Court for the District of Maryland.[3]  In that action, Microsoft has sought discovery from Novell and now Microsoft seeks to obtain similar discovery from SCM,[4] as well as access to information contained within 158 boxes belonging to The Canopy Group which are in SCM's possession.[5]

---

[1] Motion to Compel Snow, Christensen & Martineau to Produce Documents in Response to Two Subpoenas, docket no. 4, filed September 5, 2008.

[2] Microsoft's Memorandum in Support of its Motion to Compel Snow, Christensen & Martineau to Produce Documents in Response to Two Subpoenas (Memorandum in Support) at vi, docket no. 5, filed September 5, 2008.

[3] *Id.* at viii-x.

[4] *See id.* at Appendix.

[5] *Id.* at v.

I.  **BACKGROUND**

On July 23, 1996, Novell sold a PC operating system called DR DOS to Caldera, transferring both the PC operating system and "any and all claims or causes of action…associated directly or indirectly" with DR DOS (the Agreement).[6] Caldera agreed to pay Novell a substantial portion of any recovery it obtained in the lawsuit against Microsoft.[7] That same day, Caldera, with SCM representing it, asserted antitrust claims against Microsoft (the Caldera Action).[8] The Caldera Action was settled in January 2000, with Caldera releasing Microsoft from all liability.[9]

Subsequent to the settlement between Caldera and Microsoft, Novell and Caldera's successor, The Canopy Group, engaged in litigation (the Canopy Action) to determine the appropriate apportionment of the monies paid to Caldera in the settlement,[10] a question that undoubtedly involved interpretation and construction of the Agreement. However, having represented Novell and The Canopy Group in other matters, SCM had a conflict of interest and could not represent either of the parties in the Canopy Action.[11] Furthermore, SCM contends that it did not even open a file pertaining to the Canopy Action.[12]

In 2004, four years after the Caldera Action was settled, Novell sued Microsoft (the Novell Action) asserting claims against Microsoft under the federal antitrust laws for harm to the

---

[6] *Id.* at vi.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at vii.

[11] Memorandum in Opposition to Microsoft's Motion to Compel Snow, Christensen & Martineau to Produce Documents in Response to Two Subpoenas (Memorandum in Opposition) at iv, docket no. 19, filed September 25, 2008.

[12] *Id.*

WordPerfect word processing software and Quattro Pro spreadsheet software that Novell owned from June 1994 to March 1996.[13]  Two of those claims, Count I and VI, alleged that Microsoft engaged in anticompetitive conduct in the market for PC operating systems, and that this wrongful conduct in the market caused injury to the WordPerfect and Quattro Pro products.  The remaining claims were dismissed on statute of limitation grounds.[14]

In Microsoft's Answer in the Novell Action it asserted at least two defenses that Microsoft contends pertain to the two subpoenas and, thus, Microsoft's instant motion to compel.[15]  The first defense is that Novell sold its current antitrust claims to Caldera in 1996 and is no longer a real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure.[16]  The second defense is that Novell's claims are barred by *res judicata*.[17]

Microsoft has served subpoenas on both SCM and The Canopy Group seeking documents that are relevant to Microsoft's defenses in the Novell Action.[18]  The subpoena served on SCM has two purposes:  (1) to obtain documents in SCM's possession that are responsive to seven requests for production, including a Rule 30(b)(6) deposition of SCM regarding the collection, identification and authentication of the documents to be produced; and (2) that SCM make available for inspection and copying approximately 158 boxes of papers and other materials located at SCM's offices belonging to the firm's former client, the Canopy Group.[19]  Importantly, The Canopy Group has agreed to allow Microsoft to make available for inspection

---

[13] Memorandum in Support at viii.

[14] *Id*. at viii-ix.

[15] *Id*. at ix.

[16] *Id*.

[17] *Id*.

[18] *Id*. at xi.

[19] *Id*. at v.

the documents in those same 158 boxes, in response to a subpoena that was duly served on The Canopy Group.[20]

## II. DISCUSSION

### A. The 158 Boxes Belonging to The Canopy Group in the Possession of Snow, Christensen & Martineau

There is no dispute that the 158 boxes may contain confidential documents or attorney work product.  The parties, however, dispute the procedures to be used for reviewing the context of the boxes for confidential documents and/or attorney work product and which party will bear the burden of undertaking the review.  The Canopy Group has agreed to allow Microsoft to go through the boxes subject to The Canopy Group's ability to "claw back"[21] any document to which The Canopy Group wants to assert a privilege.[22]  SCM contends, however, that it may claim a privilege to any attorney work product contained in the boxes -- independent of The Canopy Group's privilege to such information.[23]  SCM "does not want the very law firm, Ray Quinney & Nebeker, who [sic] represented Microsoft in the Caldera [Action], to review and sift through SCM's work product related to the Caldera [Action]."[24]  Because "it would very expensive and burdensome for SCM to review all documents in the boxes to locate, log and

---

[20] Microsoft's Reply Memorandum in Further Support of its Motion to Compel Snow, Christensen & Martineau to Produce Documents in Response to Two Subpoenas (Reply Memorandum) at 2, docket no. 23, filed October 6, 2008.

[21] A "claw-back" arrangement permits sifting of voluminous discovery documents by a requesting party, subject to reservation of privilege claims.  Newly adopted Fed. R. Evid. 502 validates certain "claw-back" agreements.  *See* "Proposed New Evidence Rule 502, Committee on rules of Practice and Procedure: Judicial Conference of United States (September 2007) contained in Letter from September 26, 2007, Lee H. Rosenthal to Senator Patrick J. Leahy, et al. (Sept. 26, 2007), found at http://www.uscourts.gov/rules/Hill_Letter_re_EV_502.pdf (last visited December 9, 2008).

[22] *Id.*

[23] Memorandum in Opposition at 3.

[24] *Id.* at 2.

remove the privileged documents"[25] SCM seeks to prohibit the production or, alternatively, have Microsoft pay SCM's review costs, which SCM estimates will be $80,000.[26]

Microsoft counters that "while a lawyer in certain circumstances may have an independent interest in protecting his own work, '[w]hen lawyer and client have conflicting wishes or interests with respect to work-product material, the lawyer must follow [the] instruction[s] of the client.'"[27]

The court agrees with Microsoft. As one court has stated, it "is evident from the reasoning of *Hickman v. Taylor*,[28] the purpose of the work-product protection is to safeguard the efforts of the attorney on behalf of his client by preventing an adversary's counsel from obtaining a free ride on the work of the attorney,"[29] rather than providing an independent right of privacy to the attorney to bar discovery in litigation in which the client is not a party. Moreover, "[h]aving been hired to serve the client, the attorney cannot fairly be authorized to subvert the client's interests by denying to the client those work papers to which the client deems it necessary to have access." In the case just cited, the court was confronted with similar facts as are present in this case. The former client requested the attorneys release documents prepared by the attorney on behalf of the client, who presumably paid for and was the intended beneficiary of the labor.[30]

Similarly, in this case, The Canopy Group, the former client, has agreed to allow Microsoft to peruse the 158 boxes at Microsoft's expense, subject to later being able to assert a

---

[25] *Id.* at 2-3.

[26] *Id.* at v.

[27] Reply Memorandum at 2 (quoting Restatement (Third) of the Law Governing Lawyers § 90 cmt. c (2000)).

[28] 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

[29] *Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 291, 320 (S.D.N.Y. 1991).

[30] *Id.*

privilege claim as to the documents Microsoft identifies as relevant to the Novell Action.[31] The reason that SCM gives for objecting to this procedure is that it does not want the opposing counsel in the Caldera Action to see work-product material produced in that case,[32] a case that was settled back in 2000.[33] The court finds this reasoning to be unpersuasive as it does not fulfil the purpose for the work-product privilege articulated in *Hickman*, to prevent "free riding" by an adversary. Likewise, SCM's argument that Microsoft should bear the cost of SCM's own review of the documents because Microsoft can better afford the cost[34] is also unpersuasive. Therefore, SCM has the option of turning over the 158 boxes for Microsoft's review, subject only to The Canopy Group or SCM later asserting a privilege to any identified relevant documents, or SCM can review the documents itself with SCM bearing the cost of review.

      B.     *Responsive Documents in Snow, Christensen & Martineau's Possession With Respect to the Canopy Action*

SCM states that it did not represent either party in the Canopy Action due to a conflict of interests.[35] SCM also asserts that because it did not represent either party in the Canopy Action it did not even open a file pertaining to that action.[36] Therefore, according to SCM, the search for documents, which may be responsive to Microsoft's specific requests, would require a blind search through all of its Novell-related files and such a search would be unduly burdensome.[37] Furthermore, Microsoft has requested the same information from Novell.[38] Novell is a party to the pending litigation for which the substantially similar requests have been made and the court

---

[31] *Id.*

[32] Memorandum in Opposition at 2.

[33] Memorandum in Support at vii.

[34] Memorandum in Opposition at 7.

[35] *Id.* at iv.

[36] *Id.*

[37] *Id.* at 9.

[38] *See* Memorandum in Support at Appendix.

is unconvinced at this time that Microsoft will not be able to acquire the documents it seeks from Novell.  Until it becomes more apparent that Novell is unable to provide the documents sought by the substantially similar requests made to SCM, the court will not require SCM to undergo the unduly burdensome search through its files to comply with this part of the subpoena.

**ORDER**

IT IS HEREBY ORDERED that the motion to compel Snow, Christensen & Martineau[39] is GRANTED IN PART AND DENIED IN PART.

Within ten business days of this order, SCM shall make available the 158 boxes for review by Microsoft, subject to "claw back" by The Canopy Group or SCM of any privileged documents from the set of documents selected for copying by Microsoft.  In the alternative, within ten business days of this order SCM may communicate to Microsoft in writing that SCM will conduct the review of documents, at SCM's expense, and within 60 days from the date of this order (a) provide a privilege log indicating the documents for which a work-product privilege is asserted, and (b) make available documents to which no privilege is asserted.

Snow, Christensen & Martineau shall not be required to produce documents responsive to Microsoft's requests for information pertaining to the Canopy Action.

DATED this 10th day of December, 2008.

BY THE COURT:

_____
David Nuffer
United States Magistrate Judge

---

[39] Motion to Compel Snow, Christensen & Martineau to Produce Documents in Response to Two Subpoenas, docket no. 4, filed September 5, 2008.